Your Honor, this was an appeal by Mr. Morales Beltran to, in effect, certain of the decisions that were made early on in the trial during the in-memory process, in which we attempted to exclude various points of evidence, particularly with respect to what we feel was the major issue in the case was, of course, an uncharged instance dating all the way back to 2000, almost ten years before, in which Mr. Morales was stopped at the border, allegedly. The vehicle was examined, and there was similar substance found at that time, for which he attempted to obtain some more illumination from the court at the time with respect to the reason. There's not a lot of huge discussion based on why Judge Benitez ultimately decided to include it, but one of the things I think was missed, and hopefully was adequately addressed in our briefs, was the fact was that if they chose to use this particular instance, it should have been pointed out and made abundantly clear. There was no actual conviction as a particular instance. And then again, given the age and the dissimilarities in the circumstances, all should have had more of a bearing and, I think, deals with the issues that I know trial judges face every day about being cautious about this kind of information coming in and potentially causing a particular problem with respect to a given defendant's fair trial rights. There were other issues with respect to the course of the trial, which we also attempted to deal with and eliminate, and that had to do with the use of expert opinion concerning the value of the contraband. Going back to the 4.4b evidence for a moment, counsel, this is review for abuse of discretion, correct? Yes, correct. That is certainly one of our particular issues in this particular instance. So I think a point in your favor is that the conviction is quite old, but balanced against that is just the striking similarity between the prior 2,000 arrests and the facts of this current case. The only difference being the location where the marijuana was hidden. Well, and even so, I understand and appreciate the court's question, but nevertheless, I think that if you look at these kinds of circumstances, in particular here that I hope I was emphasizing with respect, there was no actual conviction. It often turns out that for various reasons, the enforcement authorities sometimes will simply not prosecute someone. And this happens sometimes in the illegal alien cases, and so for whatever reason, they will make a snap decision not to prosecute someone at that point in time. Certainly the government, I think, would have been on sounder ground, and perhaps Judge Benita, with respect to his discretion, if there had, in fact, been conviction, and I might not be as able to speak with you directly about this, where I think prejudice and abuse can be. Counsel, was the truck he was driving his? Yes. So it was his truck that had an altered gas tank. And what was his defense? That somebody altered the tank and he didn't know anything about it? Well, Your Honor, I had to make the trial call about whether or not to, what evidence to introduce, and I had to make the ultimate decision. But his defense, in effect, was, I'm summarizing, that he did not know the material was in the car or in the truck. Okay. Was the government seeking a jewel instruction? The willful ignorance? I don't recall. I don't believe they did seek that particular instruction, and I'm not sure why. Did your client take the stand?  So, going back to the 404B evidence, it's interesting, the fact that there was not a conviction, and that the arrest was stale, would tend to lead to the idea that there probably wasn't a charge and a conviction because of the issue, the element of intent. Because certainly all of the other elements of the crime were obvious at the time of the arrest. So the only missing element was intent. But the district court admitted it as evidence not of propensity, but as to his intent. So the district court admitted his prior arrest where the missing element was intent to show intent on the second occasion. Now, in further researching this, we've seen that in other circuits, but not in the Ninth, courts will admit the role of 404B evidence where they're under the doctrine of coincidence, that multiple, doing something multiple times where you're missing the element of intent kind of will, you can infer intent if someone's caught doing, you know, arrested for doing the same kind of act on multiple occasions. We haven't explicitly adopted that doctrine here, but I'm wondering, that may be the way, the reason that the district court actually saw this is that it's too much of a coincidence, and therefore it is probative of intent. Can you respond to that? What I think I should say to that is I understand the thrust of the argument, and that certainly the other courts may be moving in that direction. I think, but the ultimate bottom line, it must be the focus is to be cautious in using the court's discretion, because in trying to infer intent from a stale prior instance where there was no actual conviction, I think is the biggest problem I see, and I would encourage the court perhaps not to necessarily move in that direction or abandon the current standard, because I think it can set up a dynamic, and I think the unfortunate thing in this particular case is that it's, that particular instance, if you take the course of the trial and the evidentiary matters that we were discussing, in addition to the other grounds I've cited in the papers, I think it had an ultimately less than admirable effect on the ability to maintain our fair trial, and I hope I've made a stamp at answering your question. All right. Do you want to reserve the rest of your time? Yes, if I may. All right. Thank you. Good morning, Your Honor. Matthew Sutton on behalf of the United States for the Appellate. In this case, the District Court properly analyzed the proposed 404B evidence under the Ninth Circuit four-part test and correctly admitted that evidence into evidence. Starting with the first crime, that the evidence proved a material point, I believe that the District Court properly acknowledged that this evidence was relevant of the defendant's knowledge, his intent, and his absence of mistake for the 2011 conduct. Okay. Let's look at that. What's the theory behind that? Yes, Your Honor. The theory is, as Mr. Blake said, the defense theory was they stipulated at trial that marijuana was the drug that was imported into the United States and it was marijuana in the car. But what was at issue at trial was the defendant's knowledge of that marijuana in the car or his intent to carry that into the United States. I think the theory that the United States proceeded on was to show that this defendant was not simply an innocent dupe or a bystander who was unlucky for the second time. That was the doctrine of coincidence. I believe that's correct, Your Honor, although I would also say that the knowledge element goes to it. And I think I would develop that point because the evidence of the 2000 arrest, I think, was a little different than the 2011 conduct at issue here. And the 2000 arrest, the two CBP officers who testified at trial testified that the defendant showed extreme signs of nervousness, inability to make eye contact, and that the vehicle that he was driving had a strong odor of soap. So, you know, at that point it seemed to be he was also the registered owner and sole occupant and driver of that car in 2000. Here in 2011, the defendant obviously has become more sophisticated as his importation of marijuana. The CBP officers did not testify. Wait, wait, wait. I'm sorry. You said he became more sophisticated in his importation? Yes. Well, how do we know that he's imported marijuana? Well, I think... That's what you have to prove. You're sort of assuming the conclusion, aren't you? You're begging the question. Well, I think there was enough in that 2000 arrest to show that the defendant had knowledge of the marijuana in his vehicle. But he was never convicted. I understand that you want to get it in for other purposes, but you're begging the question just a little bit to say he's become more sophisticated in his importation methods, right? Well, I believe... The government doesn't have any basis for saying he's become more sophisticated in his methods if it's never proven that he's previously imported marijuana. Well, I think it just goes to the defendant's knowledge. And the only difference in the two incidences is the sophistication of the secret compartment that the marijuana is concealed in. In the first instance, it's a hole cut out of his bumper. In this case, as our expert auto mechanic testified at trial, it was a sophisticated compartment in the gas tank that took a mechanic between 10 to 12 hours to construct and would have taken multiple hours to remove from the vehicle. So I think that was the difference in sophistication that the United States relied on at trial. But moving on to the... But would you have a fair case if he'd been arrested on multiple times instead of just once a decade previously? I think you're right, Your Honor. We would have a stronger case. But in this instance, as the Ninth Circuit has held, you know, even one incident has been found sufficient under 404B. And I would look to the United States v. Vaux, 2005, a Ninth Circuit decision where a 13-year-old prior drug conviction was the Ninth Circuit found was properly... And being a decade earlier. And I think to address that point, the United States pointed out the substantial similarities between the 2000 conduct and the 2011 conduct at issue here. And that's the factor that the Ninth Circuit has identified when it's addressing potential remoteness concerns. So despite the fact that the arrest occurred over 11 years ago, the substantial similarities between the two incidents is that it was at the same port of entry, Otay Mesa, that involved the same drug, marijuana, that involved the same approximate amount of marijuana, 41 pounds in 2011 versus approximately 45 pounds in 2000, and that it was also concealed and transported in the same method. And I think those are the four substantial similarities that address the potential remoteness. But they weren't the same method. You just told us that the second method was much more sophisticated and difficult and different. Maybe I'll back up. The same method, kind of writ large, of secreting or hiding contraband in the defendant's vehicle, which he was the driver, sole occupant, and registered owner of. Now, certainly the difference was the sophistication on where he hid the marijuana. But that larger overall method of concealing contraband in the defendant's vehicle and then proceeding across the border is the same between 2000 and 2011. And unless the Court has any other questions for me, I'd be prepared to submit. Does anyone have any? No? Thank you, Counsel. We have some rebuttal time, Mr. Blake. No? All right. Thank you very much, Counsel. The case is submitted, and we'll take Pollack versus North...
judges: Wardlaw, Bybee, Nguyen